[No. B041921. Second Dist., Div. Two. July 14, 1989.]

JAYNE McKAY, Plaintiff and Respondent, v.
CHARLES CHRISTOPHER LONGSWORTH, Defendant and
Appellant.

**COUNSEL**

Naveed Alam for Defendant and Appellant.

James J. Regan for Plaintiff and Respondent.

**OPINION**

**GATES, J.**—Despite our earlier observations, the appellate department of the Los Angeles superior court persists in certifying that its decisions meet the standards for publication (Cal. Rules of Court, rule 976(b)) even after having ruled those self-same decisions contain no issues meriting certification. (Cal. Rules of Court, rule 63.) Therefore, our comments in *Beizer*

v. *Financial Savings & Loan Assn.* (1985) 172 Cal.App.3d 133, 134-135 [218 Cal.Rptr. 143], are equally apposite here: ". . . Thus deprived of (1) a statement of the question or questions believed to require resolution (Cal. Rules of Court, rule 63(e)) and (2) an opportunity to review the record that underlies these questions prior to deciding whether or not to order a transfer (Cal. Rules of Court, rule 64(b)), we frequently must base our initial decision [regarding the need for transfer] largely upon guesswork. [¶] However, since the instant case is before us, we shall attempt to speak to the potential issues inherent therein, even though it is now clear the appellant has overlooked the obligation imposed upon one who would challenge a trier of fact's decisions to perfect a record that demonstrates the existence of the errors alleged. [Citations.]"

Defendant Charles Christopher Longsworth appealed to the appellate department after a municipal court judge had awarded Dr. Jayne McKay damages in the amount of $15,000 plus her attorneys' fees and costs. The appellate department reversed in a decision which, as noted, it proposed to publish.

We ordered transfer on our own motion only to discover the record on appeal was limited almost to the point of nonexistence. That is, appellant, though he had elected to prepare a settled statement in lieu of a reporter's transcript, had failed to do so in timely fashion. ■ Consequently, since the testimony of the witnesses and any other oral proceedings had in the trial court are not before us, we must assume that all the ultimate facts set forth in the trial court's statement of decision were fully supported by the evidence presented.

Certain facts, of course, were undisputed. We know that Longsworth, falsely purporting to be an attorney entitled to advise and represent a Dr. Michael Alkov, prepared and filed a civil action in the superior court against respondent McKay alleging McKay had stolen some of Dr. Alkov's patients by unfair methods of competition. The complaint prayed for $10 million compensatory and $10 million punitive damages.

After it was discovered that Longsworth was not a member of the bar, Naveed Alam, who is an attorney, and whose address and telephone number were the same as Longsworth's, was substituted in Longsworth's place and stead. Nevertheless, though the action itself was dismissed in the pleading stage, this did not occur until after Dr. McKay had expended $2,579.87 in costs and attorneys' fees. In addition, simply because the complaint had

been filed, Dr. McKay's malpractice carrier increased her annual premiums from $1,200 to $5,000. Further, while this suit seeking $20 million was pending against her, Dr. McKay experienced such emotional distress as to produce indigestion, nausea, headaches, and insomnia, rendering her physically ill.

Following dismissal of Alkov's action, Dr. McKay filed the present municipal court suit charging Longsworth had tortiously harmed her by engaging in the unauthorized practice of law, and that Alam had conspired therein. At trial Dr. McKay called Longsworth, Alam, and Dr. Alkov as adverse witnesses, but each refused to answer any substantive questions on the ground that to do so would incriminate them. Defendants put on no evidence.[1]

 We have concluded that Longsworth's challenge to the resulting judgment against him is meritless. By his unauthorized practice of law, he committed a misdemeanor. (Bus. & Prof. Code, § 6126, subd. (a).)[2] As previously noted, on the record before us we must accept as true, since the trial court so found, that Dr. McKay was harmed as a proximate result thereof. By statute, Longsworth, in causing injury or damage to Dr. McKay by his unlicensed practice of law, was also liable to her "for treble the amount of damages assessed" plus, in the court's discretion, costs and attorneys' fees. (Code Civ. Proc., § 1029.8, subd. (a).)[3] Although the trial

---

[1] For reasons we cannot divine from our skeletal record, Alam represented both Longsworth and himself in the instant proceeding which exonerated him while holding Longsworth liable. However, because Dr. McKay did not appeal and we lack an evidentiary record, we are unable to determine why Dr. Alkov continued to make payments to Longsworth even after Longsworth's deception had been discovered and Alam had been substituted in his stead, or why, even as late as the institution of the present suit, Longsworth apparently continued to hold himself out as an attorney in offices he shared with Alam.

While there may be entirely reasonable explanations for these oddities, nonetheless we shall direct the clerk of our court to send a certified copy of this opinion to the State Bar of California, which may wish to investigate Alam's relationship to Longsworth throughout these vexed proceedings.

[2] "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor." (Bus. & Prof. Code, § 6126, subd. (a).)

[3] "Any unlicensed person who causes injury or damage to another person as a result of providing goods or performing services for which a license is required under Division 2 (commencing with Section 500) or any initiative act referred to therein, Division 3 (commencing with Section 5000), or Chapter 2 (commencing with Section 18600) or Chapter 3 (commencing with Section 19000) of Division 8, of the Business and Professions Code, shall be liable to the injured person for treble the amount of damages assessed in a civil action in any court having proper jurisdiction. The court may, in its discretion, award all costs and attorney's fees to the injured person if that person prevails in the action." (Code Civ. Proc., § 1029.8, subd. (a).)

court did not specify the apportionment of its $15,000 award, Longsworth does not assail the amount thereof, which in any event is amply supported by the trial court's findings and conclusions.

Further, in the absence of an evidentiary record, we obviously cannot say that this judgment is not equally sustainable as compensatory and punitive damages for the severe emotional distress which respondent's intentional criminal conduct inflicted upon Dr. McKay. Appellant's argument that the underlying lawsuit might have been filed even if Dr. Alkov had consulted and been advised by a licensed attorney, rests entirely upon the assumption that Longsworth's lack of proven qualifications and his willingness to commit a crime did not facilitate the bringing of the action. There is, of course, nothing in the record to support such speculation. In fact, as noted, the trial court expressly found that Dr. McKay's damages were proximately caused by Longsworth's unlawful misconduct.

Of course, contrary to the concerns expressed by our colleagues in the appellate department, any questions regarding the duties a licensed attorney may owe to persons other than his own client (see *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 883 [254 Cal.Rptr. 336, 765 P.2d 498]; *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 923 [123 Cal.Rptr. 237]) have no relevance here. ■ Manifestly, none of the "important policy considerations" (*Sheldon, supra,* at p. 883) which largely shield licensed attorneys from third party suits could, or should, protect those who intentionally violate the very laws which seek to protect the public by requiring the testing and licensing of those who would practice law.[4]

■ The observations made by our Supreme Court over 30 years ago in *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 651 [320 P.2d 16, 65 A.L.R.2d 1358], apply with equal force to appellant's actions here. "This was an important transaction requiring specialized skill, and defendant clearly was not qualified to undertake it. His conduct was not only negligent but was

---

[4] "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client. [Citation.]" (Fn. omitted.) (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 344.)

also highly improper. He engaged in the unauthorized practice of the law [citations], which is a misdemeanor in violation of section 6126 of the Business and Professions Code. *Such conduct should be discouraged and not protected by immunity from civil liability,* as would be the case if plaintiff, the only person who suffered a loss, were denied a right of action." (Fn. omitted, italics added.)

The judgment is affirmed. Costs to respondent. The trial court is hereby authorized to award respondent additional attorneys' fees incurred by her in connection with this appeal. (Code Civ. Proc., § 1029.8, subd. (a).)

Roth, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 28, 1989.