[No. B137582. Second Dist., Div. Three. Sept. 27, 2000.]

In re STEVEN VARGAS on Habeas Corpus.

## COUNSEL

Christine Vento for Petitioner.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Arthur H. Auerbach, Deputy Attorneys General, for Respondent.

## OPINION

**ALDRICH, J.**—Petitioner Steven Vargas pled nolo contendere to three counts of forcible lewd conduct upon a child (Pen. Code, § 288, subd. (b)(1)). Petitioner was sentenced to a total prison term of 24 years.

Petitioner filed a petition for writ of habeas corpus. In the petition he contended that his attorney, Brenda Vargas,[1] rendered ineffective assistance of counsel and coerced him into accepting the plea. To support his petition, petitioner brings forth sufficient evidence to warrant an evidentiary hearing as it appears petitioner's factual statements are believable and Attorney Vargas's statements to the contrary lack credibility.

We conclude petitioner has made a prima facie showing of entitlement to an evidentiary hearing on issues raised in said petition. We grant the petition for writ of habeas corpus and discharge the order to show cause. We remand to the superior court for the purpose of conducting an evidentiary hearing on issues raised in said petition, including but not limited to, whether petitioner's counsel, Attorney Brenda Vargas was ineffective and whether petitioner was coerced into accepting the plea agreement.

## Factual and Procedural Background

1. *Facts.*

Petitioner pled nolo contendere. According to preliminary hearing testimony, petitioner continually sexually abused his daughter for approximately 10 years. According to the testimony, the sexual abuse began when the child was three or four years old and consisted of numerous incidents and types of illegal conduct.

Petitioner denied abusing his daughter. He asserted that the allegations were fabricated and brought by his former wife out of revenge and by his daughter to avoid moving with petitioner out of state.

2. *Procedure.*

In count 1, petitioner was charged with continuous sexual abuse, a serious felony. (Pen. Code, §§ 288.5, 1192.7, subd. (c).) In counts 2, 3, and 4, petitioner was charged with forcible lewd acts upon a child, serious felonies. (Pen. Code, §§ 288, subd. (b)(1), 1192.7, subd. (c).)

On October 14, 1997, pursuant to a plea agreement, petitioner pled nolo contendere and was sentenced to the high term of eight years on counts 2, 3, and 4, to run consecutively, for a total prison term of 24 years.

We determined that the allegations in the petition for writ of habeas corpus, if true, stated a prima facie case for relief. (*In re Visciotti* (1996) 14

[1]It appears that Attorney Vargas is not related to petitioner.

Cal.4th 325, 334 [58 Cal.Rptr.2d 801, 926 P.2d 987]; *People v. Duvall* (1995) 9 Cal.4th 464, 475 [37 Cal.Rptr.2d 259, 886 P.2d 1252].) We issued an order to show cause. We directed the People to show why the judgment should not be reversed. The People filed a return to the order to show cause, attaching numerous items, including the declaration of Attorney Vargas. Petitioner filed a traverse, attaching a number of items and declarations.

Petitioner filed an appeal, which we heard concurrently with the within petition for writ of habeas corpus. In an unpublished opinion filed on June 27, 2000, we affirmed the judgment. (*People v. Vargas* (June 27, 2000, B120542).)

In this opinion, we grant the petition for writ of habeas corpus and discharge the order to show cause. We conclude that petitioner's entitlement to relief hinges on the resolution of factual disputes. (*People v. Duvall, supra,* 9 Cal.4th at p. 478.) This court is not designed to conduct evidentiary hearings nor to determine credibility of witnesses. Thus, we direct the superior court to conduct an evidentiary hearing and we grant jurisdiction to that court to grant or deny relief. (*People v. Romero* (1994) 8 Cal.4th 728, 739-740 [35 Cal.Rptr.2d 270, 883 P.2d 388].)

## Discussion

1. *Issues raised.*

In the petition for writ of habeas corpus, petitioner makes numerous arguments in support of his contention that the judgment should be reversed and he should be permitted to withdraw his plea. We only address petitioner's arguments that his counsel, Attorney Brenda Vargas, was ineffective because she failed to adequately investigate, failed to prepare for trial, and rendered inadequate advice regarding the potential sentence. We also address the contention that Attorney Vargas coerced petitioner into accepting the plea agreement.[2]

2. *The standard of review.*

The state and federal Constitutions both guarantee that persons deprived of their liberty have the right to petition for a writ of habeas corpus. (U.S. Const., art. I, § 9; Cal. Const., art. I, § 11.) The writ "has been aptly termed 'the safe-guard and the palladium of our liberties.' . . ." (*In re Clark* (1993) 5 Cal.4th 750, 764 [21 Cal.Rptr.2d 509, 855 P.2d 729], citation omitted.) It

[2]We have not addressed additional issues raised by petitioner. By limiting our discussion, we do not intend to preclude the trial court from addressing other issues.

may be the last safeguard our judicial system provides for persons whose conviction was wrongful. (*Id.* at p. 804 (conc. & dis. opn. of Kennard, J.).) In reviewing a petition for writ of habeas corpus, it is our responsibility to assure defendants are incarcerated only after receiving competent representation of counsel. (U. S. Const., 6th Amend.) It is also our responsibility to assure that if defendants enter pleas, they have done so only after a knowing and intelligent waiver of certain constitutional rights. (*Brady v. United States* (1970) 397 U.S. 742, 748 [90 S.Ct. 1463, 1468, 25 L.Ed.2d 747]; *In re Ibarra* (1983) 34 Cal.3d 277, 284 [193 Cal.Rptr. 538, 666 P.2d 980].)

The state has an interest in the prompt implementation of decisions and in the importance of the finality of judgments. (*In re Clark, supra,* 5 Cal.4th at p. 764.) Thus, "[a] habeas corpus petitioner bears the burden of establishing that the judgment under which he or she is restrained is invalid. [Citation.] To do so, he or she must prove, by a preponderance of the evidence, facts that establish a basis for relief on habeas corpus. [Citation.]" (*People v. Visciotti, supra,* 14 Cal.4th at p. 351.) If we find material facts in dispute, or disputes which hinge on the credibility of witnesses, we may transfer the matter to the superior court, for a determination of the disputes. After the evidentiary hearing, we may confer jurisdiction on that court to either grant or deny relief based upon the findings. (*People v. Romero, supra,* 8 Cal.4th at pp. 739-740.)

3. *Ineffective assistance of counsel.*

Petitioner contends he did not receive effective assistance of counsel. We conclude an evidentiary hearing is warranted as the issue hinges upon the credibility of witnesses.

A claim of ineffective assistance of counsel has two components: " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.] [¶] To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' [Citation.] To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*Williams v. Taylor* (2000) 529 U.S. 362, 390-391 [120 S.Ct. 1495, 1511-1512, 146 L.Ed.2d 389], citing *Strickland v. Washington* (1984) 466

U.S. 668, 694 [104 S.Ct. 2052, 2068, 80 L.Ed.2d 674]; *In re Jones* (1996) 13 Cal.4th 552, 561 [54 Cal.Rptr.2d 52, 917 P.2d 1175].) The ineffectiveness must "deprive the defendant of a substantive or procedural right to which the law entitles him." (*Williams v. Taylor, supra,* 529 U.S. at p. 393 [120 S.Ct. at p. 1513], fn. omitted.) "[T]here are situations in which the overriding focus on fundamental fairness may affect the analysis." (*Id.* at p. 391 [120 S.Ct. at p. 1512].)

Our review of an attorney's performance is a deferential one. For example, " '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . .' [Citation.]" (*In re Cudjo* (1999) 20 Cal.4th 673, 692 [85 Cal.Rptr.2d 436, 977 P.2d 66].) However, such deference cannot be abdication. Deference " ' "must never be used to insulate counsel's performance from meaningful scrutiny and thereby automatically validate challenged acts or omissions." ' [Citation.] 'Otherwise, the constitutional right to the effective assistance of counsel would be reduced to form without substance.' [Citation.]" (*In re Jones, supra,* 13 Cal.4th at pp. 561-562.)

Here, we are dealing with a situation in which petitioner entered into a plea agreement. "The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions. [Citation.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 [8 Cal.Rptr.2d 713, 830 P.2d 747], sub. opn. order issued, *Alvernaz v. Ratelle* (S.D.Cal. 1993) 831 F.Supp. 790.) "Although [the decision to plead guilty pursuant to a plea bargain instead of proceeding to trial is a decision ultimately] made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain." (*In re Alvernaz, supra,* 2 Cal.4th at p. 933.)

"Defense counsel have the obligation to investigate all defenses, explore the factual bases for defenses [citation] and the applicable law. [Citation.]" (*People v. Maguire* (1998) 67 Cal.App.4th 1022, 1028 [79 Cal.Rptr.2d 573].) "The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial. [Citations.]" (*In re Alvernaz, supra,* 2 Cal.4th at p. 933.)

The entry of a plea must be a " 'voluntary and intelligent choice among the alternative courses of action open to the defendant.' [Citations.]" (*Hill v. Lockhart* (1985) 474 U.S. 52, 56 [106 S.Ct. 366, 369, 88 L.Ed.2d 203].) The voluntariness of a plea depends on "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' [Citation.]" (*Ibid.*)

"It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. [Citations.] [When the contention is that incompetent advice led to a defendant's pleading guilty], a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. [Citation.]" (*In re Alvernaz, supra,* 2 Cal.4th at p. 934; *People v. Maguire, supra,* 67 Cal.App.4th at p. 1028.)

a. *Evidence of habitually disregarding the needs of clients.*

In many appellate briefs, criminal defendants raise the argument that their trial counsel was ineffective, even though the level of professional services rendered met, or even surpassed, the required standard of care. The simple fact that a particular trial attorney has been accused of or has a reputation for rendering inadequate services, or has been found incompetent may have little relevancy in proving the attorney rendered ineffective assistance of counsel in another case. (*Maciel v. Carter* (N.D.Ill. 1998) 22 F.Supp.2d 843, 858.) Ordinarily, accusations of incompetency cannot be used to subject counsel to open-ended inquiries about counsel's entire career. (*Bonin v. Calderon* (9th Cir. 1995) 59 F.3d 815, 828-829.) To find that an attorney has rendered services below the standard of care, each case must be examined according to its own facts. (*Strickland v. Washington, supra,* 466 U.S. at p. 690 [104 S.Ct. at p. 2066].) Any evidence of prior neglect must have a bearing on the new accusations. (*Maciel v. Carter, supra,* at p. 858.)

Here the repeated and severe accusations of misfeasance on the part of Attorney Vargas have been recognized by many courts as having substance worthy of investigation. This is not the usual case.

At petitioner's request, we have taken judicial notice of the following cases in which Attorney Vargas represented criminal defendants. These and other cases may establish a pattern by Attorney Vargas of rendering ineffective assistance of counsel. (*Sanders v. Ratelle* (9th Cir. 1994) 21 F.3d 1446, 1460.)

In May 2000, in a case involving Jose Casillas Camarena, Division One of this District affirmed a judgment of conviction. However, on direction of the Supreme Court, it also issued an order to show cause returnable in the superior court based upon a claim that Attorney Vargas rendered ineffective assistance of counsel. Camarena was convicted on two counts of continuous

sexual abuse arising from charges that he sexually abused two young girls (Pen. Code, § 288.5). Although there was exculpatory medical evidence and evidence to impeach the credibility of the witnesses, Attorney Vargas did not present the evidence. Attorney Vargas also failed to adequately cross-examine witnesses, present a sentencing memorandum, or present mitigating factors at the sentencing hearing. Division One called Attorney Vargas's closing argument "gibberish." Division One believed that Attorney Vargas "failed utterly to provide defendant with any defense." The case was returned to the superior court for an evidentiary hearing and factual determinations on the issues presented.

This Division decided a case involving Jose M. Canela on October 26, 1999. Canela was convicted of two counts of special circumstance murder, two counts of first degree robbery, and first degree burglary. (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17), 211, 459.) We stated that Attorney Vargas's representation was "clearly deficient," falling "far below an objective standard of reasonableness under prevailing professional norms. [She] made no opening statement or closing argument. [She] asked a total of 22 ineffectual questions of the People's four witnesses and she presented no defense whatsoever. [Attorney Vargas] made no statement at sentencing and . . . 'stood mute.' . . . In fact, [Attorney Vargas's] performance was so lacking and the resulting record on appeal is so minimal that it is difficult to tell exactly what steps a reasonable defense counsel could or should have taken in furtherance of Canela's defense." Because the evidence was overwhelming, the defendant had no articulable defense, the defendant had confessed to two first degree, special circumstance murders, and the trial court was required to sentence the defendant to life terms for his convictions, we could not conclude the "appalling" representation prejudiced Canela. We denied the accompanying writ petition without prejudice to filing an original proceeding in the superior court.

Jeffrey Lee Caito was convicted of petty theft (Pen. Code, § 666). In his petition for writ of habeas corpus, Caito claimed that he had pled guilty and admitted the priors only because Attorney Vargas promised he would be sentenced to six years. The defendant also alleged that Attorney Vargas failed to do legal research and failed to adequately advise about the consequences of the plea. The defendant was sentenced to 25 years to life. Division Seven of this district concluded a prima facie case of ineffectiveness in the representation was shown and ordered the superior court to hold an evidentiary hearing.

Steven Bullard, a state prisoner, sought relief from default and permission to file an appeal. According to Bullard, Attorney Vargas did not file a notice

of appeal even though she had promised to do so. In her declaration, Attorney Vargas declared that Bullard had pled guilty and she denied telling Bullard she would file a notice of appeal on his behalf. Subsequently, Attorney Vargas declared that she was "mistaken," and acknowledged that she had represented Bullard in a court trial. Division Five of this district resolved the factual conflicts in Bullard's favor, granted the petition for writ of habeas corpus, and permitted Bullard to file a notice of appeal.

Petitioner contends these cases will prove that Attorney Vargas was ineffective in representing petitioner. In the evidentiary hearing before the superior court, that court will be in a better position to determine whether these and other cases are relevant to establish a pattern by Attorney Vargas of rendering inept legal services and whether such pattern is relevant to prove the issues presented by petitioner. (Evid. Code, §§ 351, 1105.) Facts from other cases may be relevant with regard to Attorney Vargas's credibility. (*Bonin v. Calderon, supra*, 59 F.3d at p. 829.) A full evidentiary hearing may reveal that Attorney Vargas lacks the ability to render competent representation, takes money from defendants, does nothing, fails to adequately apprise clients of the risks and probable outcome of plea bargains, coerces defendants into accepting quick resolutions through plea agreements, and thereafter lies about the representation provided. It may be shown that if a settlement is not reached, Attorney Vargas goes to trial even though she has done no investigation and even though she is incompetent to handle the trial.[3]

b. *Failure to investigate.*

Petitioner contends Attorney Vargas failed to investigate the facts of the case. Factual issues abound.

Defendants are " 'entitled to the reasonably competent assistance of an attorney acting as [their] diligent and conscientious advocate. [Citation.] This means that before counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation.' [Citation.]" (*In re Gay* (1998) 19 Cal.4th 771, 790 [80 Cal.Rptr.2d 765, 968 P.2d 476]; *In re Visciotti, supra,* 14 Cal.4th at p. 348.)

Petitioner's expected defense was that his daughter and his ex-wife concocted the story of molestation out of revenge because petitioner was leaving his ex-wife, and his daughter did not want to move with petitioner to

[3]By this discussion, we do not intend to limit the trial court's inquiry to the cases of which we have taken judicial notice.

another state. It appears that many family friends had agreed to testify on petitioner's behalf.

The file Attorney Vargas sent to petitioner's appellate counsel contained no investigation, other than that which was provided to Attorney Vargas by the prosecution. Petitioner asserted this proved that no investigation was taken by Attorney Vargas. To contradict this argument, Attorney Vargas declared that she sent "some" items from her file to petitioner's appellate counsel, and that appellate counsel chose not to review or copy the entire file. However, a letter sent by Attorney Vargas stated that her "entire" file was delivered to appellate counsel. Further, petitioner's appellate counsel has been thorough. Given appellate counsel's tenacity, it is doubtful she would have ignored an opportunity to review Attorney Vargas's file.

Additionally, Attorney Vargas fails to delineate the steps she took to investigate the case. This is particularly curious in that a letter directed to Attorney Vargas from petitioner's appellate counsel specifically asked for this information. Attorney Vargas denies receiving this letter. Yet, her declaration lacks specificity in this regard. Attorney Vargas easily could have dispelled all accusations by detailing in her declaration the actions she had taken to investigate.

Attorney Vargas does make two specific statements in her declaration about the investigation of this case. She declares that she listened to the tape recording of an interview her investigator had with witness Rosemarie Carrillo. Based on this interview, Attorney Vargas declared she intended to call Carrillo only at sentencing because Carrillo could not provide any information on guilt. However, Carrillo declared that she had been told she would not be needed in court because the interview had been taped. Further, Carrillo declared that petitioner and his family lived with her for a period of time and she never observed any improprieties. This information would be relevant on the issue of guilt. The tape is conveniently missing from Attorney Vargas's file. Thus, we cannot evaluate its contents or Attorney Vargas's statements as to the relevancy of Carrillo's expected testimony.

Attorney Vargas also declared that she had tried to contact a person who petitioner had indicated would provide character evidence, but that she was unable to reach that person. Thus, Attorney Vargas concluded this person did not exist. These statements by Attorney Vargas are devoid of specificity. They do not even include the name of the person she purportedly tried to contact.

Attorney Vargas declares that she spoke to petitioner on numerous occasions. In contrast, petitioner declares that he spoke to Attorney Vargas only

twice. Attorney Vargas states she repeatedly asked petitioner to identify witnesses who could assist in the defense, and she had at least 15 conversations with members of petitioner's family making the same request. Petitioner denies these statements, as does petitioner's wife.

There is strong evidence that Attorney Vargas is lying when she says she did not know of, nor was able to contact, witnesses. In her declaration, Attorney Vargas denied knowing about a potential witness, Arthur Deflin. Attorney Vargas declared, "[d]uring my pre-trial investigation of the case, I was not told of anyone named Arthur Deflin." However, Attorney Vargas's file included a letter to Deflin from petitioner's wife requesting assistance. The file also contained an envelope showing Deflin's address. It appears that Delfin's testimony could have assisted the defense in that he lived with the family from 1987 to December 1994, and states that he never saw petitioner act improperly with the child.

A reasonable investigation into the facts of a case must be made before rational and informed decisions can be made about strategies, tactics, and acceptance of plea bargains.

There is a lack of credible evidence to establish that Attorney Vargas conducted an adequate investigation. An evidentiary hearing is required to ascertain whether an investigation was warranted, whether Attorney Vargas conducted an investigation, and whether any investigation was sufficient or perfunctory.

c. *Failure to prepare for trial.*

Petitioner argues that Attorney Vargas was not prepared to proceed to trial and was unable to adequately represent him, had the matter proceeded to trial.

Attorney Vargas claims she was always prepared to take the case to trial. She says her "plan" was to attack the credibility of the prosecution's witnesses. Factual determinations must be made.

Petitioner acknowledges that trial tactics are usually left to the discretion of trial counsel. (*In re Cudjo, supra,* 20 Cal.4th at p. 692; *In re Jones, supra,* 13 Cal.4th at p. 565.) However, "the reasonableness of a tactical decision . . . invites scrutiny as to whether that decision was an informed one, that is, whether it was preceded by adequate investigation and preparation. [Citation.]" (*In re Jones, supra,* 13 Cal.4th at pp. 564-565; *In re Viscotti, supra,* 14 Cal.4th at p. 348.) Here, there is credible evidence that attorney Vargas succumbed to this "plan" only because she was not prepared.

As discussed above, there is no evidence that Attorney Vargas had prepared to present evidence on petitioner's behalf, even though witnesses were willing to do so. Further, Attorney Vargas is required to be competent to carry out her plan. Criminal defendants are entitled to " 'a reasonably competent attorney acting as a diligent, conscientious advocate.' [Citation.]" (*In re Jones, supra,* 13 Cal.4th at p. 566 [even if defense counsel's strategy was to "sandbag" the prosecution, defense counsel should have thoroughly investigated the evidence to ensure benefits of this trial strategy outweighed disadvantages].) Cases handled by Attorney Vargas in the past may demonstrate that Attorney Vargas lacked the ability to handle the task before her.

Lastly, petitioner states that Attorney Vargas presented him with an ultimatum to "take the deal or have a sham trial in which [Attorney Vargas] would present no evidence on [his] behalf and would stand mute." If true, this fact would bolster petitioner's argument that Attorney Vargas actually had no plan.

There is a lack of credible evidence to demonstrate Attorney Vargas was prepared to represent petitioner. An evidentiary hearing is required to determine if Attorney Vargas was prepared for trial.

d. *Failure to provide petitioner with all relevant information.*

Petitioner argues that he accepted the plea because Attorney Vargas misadvised him. Factual determinations must be made.

To meet the required standard of professionalism with regard to whether a plea agreement should be accepted, Attorney Vargas was obligated to provide petitioner with competent advice as to all aspects of the case, including a candid evaluation of the case. This should have included an accurate discussion about the rules and regulations affecting the determination of the maximum and minimum periods of confinement, the average length of confinement served by prisoners on like charges, as well as all relevant circumstances. (*In re Alvernaz, supra,* 2 Cal.4th at pp. 936 & 937, fn. 6; *People v. Hunt* (1985) 174 Cal.App.3d 95, 104 [219 Cal.Rptr. 731]; ABA Stds. for Crim. Justice (3d ed. 1993) The Defense Function, ch. 4, std. 4-5.1 & com.)

There is no evidence before us to demonstrate that Attorney Vargas provided petitioner with all relevant information to enable petitioner to make an informed decision.

The parties focus on, and only discuss, the maximum potential sentence. Attorney Vargas declares that she informed petitioner that he could face a maximum of 40 years in prison. As we discussed in the unpublished appeal opinion, Attorney Vargas is correct in that a reformulation of the charging document could have resulted in a *maximum potential* sentence of 40 years. Thus, with regard to this portion of the equation, there is evidence that petitioner received correct advice.

However, the maximum potential sentence was but *one* factor which should have been discussed with petitioner before he agreed to accept the plea agreement. There is no indication in the record that Attorney Vargas ever discussed with petitioner the strengths and weaknesses of the case, or any other circumstances which would have resulted in an informed decision.

Further, upon an evidentiary hearing, the trial court may conclude that Attorney Vargas lacked the ability to advise petitioner as to whether he should accept the plea offer.

There is a lack of credible evidence to establish that petitioner was provided with sufficient information upon which an informed decision could have been made. An evidentiary hearing is required to ascertain if petitioner was fully informed before he accepted the plea agreement.

e. *Prejudice.*

The People argue that even if it is shown that Attorney Vargas rendered ineffective assistance of counsel, petitioner has not shown prejudice. As stated above, when defendants claim they received ineffective assistance of counsel at the plea bargain stage, they must show that had they received effective representation, they would not have accepted the offer. (*In re Alvernaz, supra,* 2 Cal.4th at p. 934; cf. *People v. McCary* (1985) 166 Cal.App.3d 1, 9-12 [212 Cal.Rptr. 114] [defendant denied effective representation when entering plea].) A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing. (Cf. *In re Alvernaz, supra,* 2 Cal.4th at p. 938.)

Although the facts of *In re Alvernaz, supra,* 2 Cal.4th 924, are different from the ones before us, its analysis is helpful. In *Alvernaz,* the defendant *rejected* a plea and went to trial, where he was convicted. The defendant argued that had he received effective representation, he would have accepted the plea agreement and not gone to trial. In examining the issue of

prejudice, *Alvernaz* looked to determine whether the defendant would have accepted the plea offer with effective assistance of counsel. *Alvernaz* stated that a number of factors were to be considered including, "whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*Id.* at p. 938.) "[A]n additional factor pertinent . . . in determining prejudice may be the defendant's stance at trial. For example, a defendant's trial protestations, under oath, of complete innocence may detract from the credibility of a hindsight claim that a rejected plea bargain would have been accepted had a single variable (sentencing advice) been different." (*Id.* at p. 940.)

Here, the record corroborates petitioner's statements that when he entered the courtroom, he thought the plea offer was 12 years and not 24 years. Petitioner declares further that had he known he would serve 24 years at 85 percent, he would not have accepted the plea agreement. When he was advised that the offer was 24 years, petitioner declares that Attorney Vargas stated that petitioner should not worry because she would be able to reduce the sentence to eight years.

Petitioner has presented credible evidence supporting his statements that his motivation in accepting the plea agreement was based upon Attorney Vargas's misrepresentations and coercive statements, as well as petitioner's well-founded belief that he had no alternative since Attorney Vargas was not prepared to proceed. Further, petitioner has insisted he is innocent, he wanted to proceed to trial, and the charges were fabricated. The evidence before us suggests that had petitioner been fully informed, and had Attorney Vargas rendered effective assistance of counsel, petitioner would not have accepted the plea agreement.

An evidentiary hearing is required to determine the truth or falsity of petitioner's and Attorney Vargas's factual allegations.

4. *Coercion.*

Petitioner contends he should be permitted to withdraw his plea because he was coerced into accepting the plea agreement. Factual issues must be resolved by the trial court.

Before defendants enter pleas, they must knowingly and intelligently waive certain constitutional rights. (*Brady v. United States, supra,* 397 U.S. at p. 748 [90 S.Ct. at p. 1468]; *In re Ibarra, supra,* 34 Cal.3d at p. 284.)

Penal Code section 1018 permits the withdrawal of a plea. "This section shall be liberally construed to . . . promote justice." (Pen. Code, § 1018.) To withdraw a guilty plea, a defendant must show, by clear and convincing evidence, good cause. (Pen. Code, § 1018; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [69 Cal.Rptr.2d 784, 947 P.2d 1321]; *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1616-1617 [44 Cal.Rptr.2d 666]; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 [2 Cal.Rptr.2d 670].)

Good cause to withdraw a plea is shown if the defendant did not exercise free judgment in entering into the plea. (*People v. Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250]; *People v. Castaneda, supra,* 37 Cal.App.4th at p. 1617; *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208 [38 Cal.Rptr.2d 592].) Pleas may be set aside if defendants are unduly influenced to accept a plea because their counsel is obviously not prepared to proceed (*People v. Young* (1956) 138 Cal.App.2d 425 [291 P.2d 980]), or the defendants represented by counsel entered into the pleas as a result of fraud or duress. (Pen. Code, § 1018; *People v. Cruz, supra,* at p. 566; *People v. Huricks, supra*; *People v. Dena* (1972) 25 Cal.App.3d 1001, 1008 [102 Cal.Rptr. 357].)

Petitioner states he was confused and controlled by Attorney Vargas, an unprepared and overbearing attorney who demanded that he accept the plea offer. Petitioner declares: "[Attorney Vargas] was presenting me with an ultimatum—take the deal or have a sham trial in which she would present no evidence on my behalf and would stand mute." Petitioner declares that he did not know until the last minute that the offer was 24 years, and that he had no alternative but to accept that offer.

In contrast, Attorney Vargas portrays the scene as one in which she calmly discussed the situation and spelled out the options to petitioner, a client who did not want to go to trial.

Given the information before us, petitioner's statements are credible. There are sufficient facts to suggest that petitioner was pressured into accepting the plea bargain by an unprepared Attorney Vargas.

First, as shown above, there is credible evidence suggesting Attorney Vargas was unprepared to proceed, a fact which was known by petitioner.

Second, petitioner's reaction in court supports his version of the facts that prior to appearing in court he had been told the offer was 12 years. When

petitioner appeared, he expressed surprise that the discussions were of a 24-year offer. This portion of the transcript, which occurred prior to the eventual plea agreement, reads: "[Petitioner]: She says 24 years. I was told, last time, of 12. [¶] [Attorney Vargas]: No. [¶] [District Attorney]: No. I told him 24 years. [¶] [Petitioner]: No, you didn't."

Other persons confirm that Attorney Vargas was discussing sentences which were much lower than 24 years. Carrillo declared that Attorney Vargas had stated that the district attorney offered a plea agreement of seven years. Petitioner's wife declares that three days before the scheduled trial, Attorney Vargas stated petitioner should take the plea offer because petitioner would serve only three years.

Petitioner also states that one reason he accepted the 24-year plea agreement was that Attorney Vargas told him not to worry, because she knew someone who could get the sentence reduced to "8 years at 50% or even give me probation." Facts from other cases may assist petitioner in establishing a pattern by Attorney Vargas of making misrepresentations to defendants prior to the acceptance of plea agreements.

Attorney Vargas's own statements on the matter raise questions. In a letter, Attorney Vargas stated that when she appeared with petitioner on September 15, 1997, she told petitioner she would "try to reduce the offer which was already at twelve (12) years." Yet, in Attorney Vargas's declaration, she declared that prior to trial there was a "possible offer" of 12 years, but it had been withdrawn. In court on October 14, 1997, Attorney Vargas indicated there never was a 12-year offer, but it was 24 years. She also declared that prior to the acceptance of the 24-year offer, she had told petitioner that a previous offer had been withdrawn and the present one was 24 years, of which he would serve 85 percent or 22 years.

The People argue that petitioner knew what he was doing, was fully informed, and grabbed the deal because he feared additional charges would be filed. The People are correct that petitioner received full waivers and was questioned by the trial court as to whether he was accepting the offer volitionally. However, as shown above, other facts suggest he did so only under pressure.

If this were the usual case, we would conclude petitioner was attempting to retract an agreement. Pleas are not set aside simply because defendants change their minds. (*People v. Nance, supra,* 1 Cal.App.4th at p. 1456;

*People v. Knight* (1987) 194 Cal.App.3d 337, 344 [239 Cal.Rptr. 413].) However, this is not the ordinary case where a defendant has second thoughts after the volitional acceptance of a plea agreement. There is credible evidence suggesting petitioner was coerced into accepting the plea agreement. Further, as demonstrated, Attorney Vargas's declaration lacks an indicia of reliability. Under the maxim of *falsus in uno, falsus in omnibus*, Attorney Vargas's multiple misrepresentations suggest that all of her statements could be disregarded.[4] On the facts before us, it is believable that Attorney Vargas placed petitioner in a position where he had no alternative but to accept the plea offer.[5]

An evidentiary hearing is required to determine whether or not petitioner volitionally entered into the plea agreement after being fully informed.

## Conclusion

"Counsel for the accused is an essential component of the administration of criminal justice." (ABA Stds. for Crim. Justice, *supra*, The Defense Function, std. 4-1.2.) It is our obligation to assure that convicted defendants have received their constitutional rights, including the aid of competent counsel, and to assure that any waiver of rights is knowingly and intelligently made.

On the record before us, we cannot conclude with confidence that petitioner entered his plea voluntarily, with the aid of competent counsel. Fundamental fairness and the need to assure that justice is served require an evidentiary hearing.[6]

## Disposition

The petition for writ of habeas corpus is granted and the order to show cause is discharged. The superior court is directed to conduct an evidentiary

---

[4]*Falsus in uno, falsus in omnibus* means "[f]alse in one thing, false in everything. [Citation.] [¶] The doctrine means that if testimony of a witness on a material issue is willfully false and given with an intention to deceive, [the] jury may disregard all the witnesses' testimony. [Citation.]" (Black's Law Dict. (5th ed. 1979) p. 543; *People v. Cook* (1978) 22.Cal.3d 67, 86 [148 Cal.Rptr. 605, 583 P.2d 130] [doctrine applied to affidavits].)

[5]The People contend the potential sentence would have increased because the district attorney was contemplating adding charges. There is nothing in the record to show that this information was known to petitioner or to Attorney Vargas.

[6]We have sent a copy of this opinion to the State Bar of California so that it may investigate whether discipline is warranted. (*McKay v. Longsworth* (1989) 211 Cal.App.3d 1592, 1595, fn. 1 [260 Cal.Rptr. 250]; *People v. Ryner* (1985) 164 Cal.App.3d 1075, 1087, fn. 5 [211 Cal.Rptr. 140]; cf. Bus. & Prof. Code, § 6086.7.)

hearing. We confer jurisdiction upon the superior court to grant or deny relief based upon the law and the facts so determined.

Klein, P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 2000.