Filed 10/6/15  P. v. Pennello CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

DANILO SERGIO PENNELLO,

      Defendant and Appellant.

E061537

(Super.Ct.No. FVI1102598)

OPINION

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Affirmed as modified.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Danilo Pennello is serving 25 years to life after he pled no contest to attempted second degree robbery and admitted to having six prior strike convictions.

1

Defendant challenges the trial court's ruling denying his motion to withdraw his plea and its decision to impose a $750 attorney fee. As discussed below, we reverse the attorney fee order but affirm the court's denial of defendant's motion to withdraw his plea.

### FACTS AND PROCEDURE

On the morning of November 10, 2011, defendant made a purchase and then loitered around the inside and outside of a bakery shop. The employees believed he might be on drugs. The owner and employees became concerned, so the owner approached defendant and asked if she could help him. Defendant left the shop, but eventually returned. Defendant walked up to the cash register with his right hand in his pocket, as if he had a gun. He told the owner in a loud and aggressive voice, "Open your fucking drawer. I want your money." The owner told him, "No." Defendant then said, "You're a bitch. Will you fucking open the drawer and give me your money?" Defendant left the store when the owner told one of the workers to call police.

At the police station, defendant told the interviewing deputy that he was sorry for the incident and, after prompting, wrote an apology letter to the store owner.

On November 30, 2011, the People filed an information alleging defendant committed attempted second degree robbery (Pen. Code, §§ 664, 211).[1] The People also alleged defendant had six prior strike convictions (§§ 667, subd. (b) & 1170.12, subd. (a)), eight serious felony convictions (§ 667, subd. (a)(1)) and two prior prison term convictions (§ 667.5, subd. (b)).

---

[1] All section references are to the Penal Code unless otherwise indicated.

On May 10, 2012, the trial court ordered defendant to be evaluated under section 1026 to determine whether he was legally sane when he allegedly committed the attempted robbery. The two psychological assessments, filed on June 27 and June 28, 2012, indicate defendant was legally sane at the time of the offense, but suffered from methamphetamine intoxication and "non-psychotic psychiatric conditions." Defendant was described as being of "borderline to dull normal intelligence" by one evaluator and "borderline range (the range between low average and mild intellectual disability/mental retardation)" by the other. The evaluators reported that defendant appeared to suffer from poor impulse control, hyperactivity and Tourette Syndrome, and self-reported a history of anxiety, depression, and paranoia.

On March 19, 2014, defendant pled no contest to the attempted robbery and admitted the six strike convictions. When accepting the plea, the trial court said to defendant regarding sentencing, "It is my understanding that you want to come back in about 90 days or so," to which defendant himself replied, "Yes, your Honor."

On June 5, 2014, defendant moved to withdraw his plea, based on sexual harassment and assaults in jail by a named sheriff's deputy. The People filed their opposition on June 26, 2014.

On June 27, 2014, the trial court held a hearing on the motion and then denied it. On that same date, the court sentenced defendant to 25 years to life pursuant to the plea agreement.

This appeal followed.

## DISCUSSION

### 1. *Motion to Withdraw the Plea*

Defendant argues the trial court abused its discretion when it denied his motion to withdraw his no contest plea because defendant established by his declaration that this plea was not the product of "free and clear judgment." Specifically, defendant argues he pled no contest under duress to escape sexual harassment and assaults by Deputy Brock Teyechea while in local custody pending the resolution of his criminal case. Defendant also argues he pled guilty to escape potential assaults by other jail inmates based on the deputy's purposeful comments that implied defendant was a homosexual.

In his declaration attached to the motion, defendant states he was sexually harassed and assaulted by the deputy in February of 2014. Defendant also states that the deputy questioned him about his sexuality in front of other inmates, which caused him to fear he would be subject to additional harassment and assaults by inmates at the jail. Defendant states that, when he entered his plea on March 19, 2014, he did not answer "Yes" when asked if he was forced or threatened to get him to plead no contest because one or more sheriff's deputies was present in the courtroom and he feared retaliation at the jail. Defendant states that Deputy Teyechea had since been fired and that defendant was suing the deputy and others for the assault and harassment. Defendant asserts that he only pled guilty so he could escape the assault and harassment at the jail by being transferred to state prison. Defendant attaches newspaper articles documenting that several named inmates, not including defendant, were suing the sheriff's department for the abusive actions of Deputy Teyechea and other deputies between January 1, 2013, and

4

the end of March 2014. One of the articles notes that Teyechea no longer works for the sheriff's department.

In its response filed June 26, 2014, the People argued that defendant finally pled no contest and accepted the People's offer of 25 years to life after the jury had been impaneled, which is also the day after defendant viewed a video of the attempted robbery and heard the trial court rule that the video was admissible.

After hearing argument from the parties on the motion, the trial court noted that defendant had been "adamant" that he wanted a trial, going so far as to have his case moved from Victorville to San Bernardino to get an open courtroom—until defendant saw the video of the crime, which the trial court described as being "in color," "very clear," and having "even very clear audio." The court also noted that defendant had told the probation officer that he wanted to change his plea to get a lower sentence and never mentioned any duress or coercion as a reason for wanting to withdraw his plea.

"On application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." (§ 1018.) However, a plea may not be set aside simply because a defendant has changed his mind. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1143.) Rather, in bringing a motion to withdraw a guilty plea, the defendant must establish by clear and convincing evidence that mistake, ignorance, fraud, duress, or some other factor overcame his exercise of free judgment when making the plea. (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) The grant or denial of such a motion is within the sound discretion of the trial court, and we uphold the trial court's exercise of that discretion unless an abuse

5

of discretion is clearly demonstrated. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.) We accept all factual findings of the trial court that are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, defendant has not established that the court abused its discretion when it found he had not proven by clear and convincing evidence that he pled no contest only under the duress of sexual and physical abuse by Deputy Teyechea and fear of potential assaults by other jail inmates. First, the trial court was not required to believe defendant's declaration, and obviously did not. A trial court is not bound to give full credence to the statements of a defendant in support of a motion to withdraw a plea, even if uncontradicted, because the defendant has an obvious interest in the outcome of the proceeding. (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

Second, the circumstances surrounding defendant's plea support the trial court's conclusion that he was motivated by the desire to avoid a near-certain conviction and a much longer sentence because of his numerous prior convictions. The trial court acted reasonably when it concluded that defendant was motivated to change his plea by the admission of the video of the crime and the seeming certainty of a conviction and even longer sentence. Further, at the hearing on his motion to withdraw the plea, defense counsel argued that defendant "entered that guilty plea to get out of county jail and immediately go to state prison." However, as the People point out, at the change of plea hearing on March 19, 2104, defendant himself asked that sentencing be delayed until *90 days* later, which is inconsistent with defendant's declaration that he was desperate to transfer from jail to state prison to avoid Deputy Teyechea. For these reasons, we cannot

6

say that the trial court abused its discretion when it denied defendant's motion to withdraw his plea.

### 2. *Attorney Fees to be Stricken*

At sentencing, the trial court followed the recommendation in the probation report and imposed an appointed counsel fee of $750. Defense counsel asked for this fee to be waived because, "With the 25 to life sentence, I don't think he has the ability to pay." The trial court responded, "Well, that is kind of inconsistent with the concept that he was actually abused and has a multimillion dollar civil suit pending." The trial court then reiterated that it was imposing the fee.

Defendant argues the attorney fee order must be reversed because the trial court abused its discretion when it found he had the ability to pay based on the civil lawsuit. The People concede and we agree.

Section 987.8, subdivision (g)(2)(B) sets forth the assumption that "[u]nless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense." (*People v. Prescott* (2013) 213 Cal.App.4th 1473, 1476.) The record reveals no unusual circumstances to rebut this presumption that defendant will be unable to pay the fee because he will be in prison for the next 25 years. The probation report shows defendant was last employed in 2005, lived with his parents, and had no assets. Two pieces of evidence did support the existence of a civil lawsuit by defendant against the sheriff's department and others—both his declaration in support of the motion to withdraw his plea, and a declaration from his defense counsel stating he had spoken

with a civil attorney who confirmed that he represented defendant in a civil lawsuit resulting from the physical assaults by Deputy Teyechea while defendant was in custody. However, any "multimillion dollar" payout from the litigation, upon which the trial court based its imposition of the appointed counsel fee, is merely speculative. The fee is herby stricken.

## DISPOSITION

The judgment is modified to strike the $750 appointed counsel fee but is affirmed in all other respects.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.