Filed 3/25/16  P. v. Urena CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042631 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1084548) |
| v. | |
| DAVID ANDREW URENA, | |
| Defendant and Appellant. | |

Pursuant to a negotiated plea bargain, David Andrew Urena (defendant) pleaded no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] (count 1) and two counts of assault with a firearm (§ 245, subd. (a)(2)) (counts 2 & 3).  He admitted a gang enhancement allegation as to each count.  Defendant filed a notice of appeal from the judgment of conviction, challenging the validity of his pleas.  The trial court granted his request for a certificate of probable cause based on his claim that the trial court erroneously denied his motion to withdraw his pleas, "submitted on grounds of Innocence."  (See § 1237.5; Cal. Rules of Court, rule 8.304(b)(1).)

Defendant's appointed counsel filed an appellate opening brief that contains a statement of the facts but raises no issues.  Counsel requests that this court independently review the record on appeal under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, 744 (*Anders*).  Counsel declares that he advised defendant, in a writing sent to his last known address, that a "Wende/Anders

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

brief" would be filed in this case and that "he may personally file a supplemental brief in this case raising any issues which he wishes to call to the Court's attention."

This court sent a letter, dated November 30, 2015, to defendant informing him that his appointed appellate counsel had filed an opening brief that did not raise any specific issues and that this court is required to examine the entire appellate record to determine whether there is any arguable issue. The letter advised defendant of his right to submit any argument that he wished to make for himself within 30 days after the date of the letter. In response to this court's letter, defendant requested an extension of time to file a supplemental brief, which this court granted. The time has now elapsed, and this court has not received a response from defendant.

We provide a brief description of the facts and procedural history of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124 (*Kelly*).)

I

*Facts*

The following facts were taken from the probation report. On June 25, 2010, at approximately 5:57 a.m., San Jose Police received a call that two persons had been shot and were lying in a driveway. Police officers responding to the scene found C.L. and I.C., who both had been shot.[2] C.L. had been shot four times, in the arm, neck (severing the spinal column), head, and back. I.C. had been shot once in the abdomen. C.L. was pronounced dead at Valley Medical Center. I.C. underwent emergency surgery, and he required a colostomy bag.

---

[2] Defendant was 16 years old at the time of the offenses. It is not clear whether the victims were also minors. Out of an abundance of caution, we refer to the victims by their initials.

A third victim, C.C., who had fled for his safety, was subsequently discovered. He had been shot twice, in the torso and hip. One bullet had lodged in his groin, and it was not removed.

Codefendant Joseph Antuna (Antuna), the victims, and others (including Antuna's brother) had met at a Jack in the Box, and they had subsequently gone to I.C.'s home to play pool. Antuna left to buy cigarettes, and he returned with defendant. C.C. recognized defendant, whom C.C. believed was involved in the stabbing of a friend. They all left the garage to talk in the driveway, and it was tense. Antuna pulled out a gun and shot C.L. and C.C. Someone shot at I.C., and then defendant shot at I.C. as he was lying on the ground. Defendant, Antuna, and Antuna's brother fled the scene. Text messages between Antuna and defendant's cousins placed defendant and Antuna together after the shooting at approximately 6:30 a.m. the same day.

It was determined that a .22-caliber handgun and a .38-caliber handgun were used in the shooting. A .22-caliber handgun was used to kill C.L.

Antuna was arrested while fleeing his residence, and a poem pertaining to gang activity was found on him. A .22-caliber handgun and four other guns were recovered during a search of the residence of Antuna's brother. In a search of defendant's residence, a partially empty box of .38-caliber ammunition and El Hoyo Palmas (Norteño) paraphernalia were discovered. The victims were part of the West Side Mob while defendant and Antuna were members of El Hoyo Palmas; the gangs were rivals within the Northern Structure (Norteños).

II

*Procedural History*

An information, filed February 10, 2011, charged defendant and two codefendants with murder (§ 187) (count 1) and two counts of attempted murder (§§ 187, 189, 664, subd. (a)) (counts 2 & 3). The information set forth a number of allegations, including

3

gang enhancement allegations as to each count and allegations that the attempted murders were willful, deliberate, and premeditated.

A plea bargain was reached and placed on the record on February 13, 2015. It provided that, in exchange for a total sentence of 21 years, defendant would plead no contest to counts 4 to 6 of an amended information, admit gang enhancements, and waive all his credits through that day. Count 4 of the amended information charged defendant with voluntary manslaughter of C.L. (§ 192, subd. (a)). Count 5 of the amended information charged him with assault with a firearm, namely a handgun, upon I.C. (§ 245, subd. (a)(2)). Count 6 of the amended information charged him with assault with a firearm, namely a handgun, upon C.C. (§ 245, subd. (a)(2)). A gang enhancement allegation under section 186.22, subdivision (b)(1)(C), was attached to count 4, and gang enhancement allegations under section 186.22, subdivision (b)(1)(B), were attached to counts 5 and 6.

Defendant initialed and signed a written advisement of rights, waiver and plea form (plea form). At the plea hearing, defendant confirmed that he had the opportunity to review each of the initialed items on the plea form with his attorney, and he had discussed them with his attorney.

The plea form reflected that, before entering the pleas, he had a full opportunity to discuss with his attorney the facts of his case, the elements of the charged offenses and the enhancements, any defenses that he might have, his constitutional rights and waiver of those rights, the pleas' consequences, including any applicable immigration consequences, and anything else he thought was important to his case. It also reflected that defendant agreed that there was a factual basis for his pleas based on his discussions with his attorney about the elements of the crime and any defenses he might have. The plea form further reflected, among other things, that defendant understood potential immigration consequences if he was not a citizen, the lifetime prohibitions concerning

4

firearms and ammunition applicable to him, and the requirement that he register as a gang member.

The court reiterated the constitutional rights that defendant was giving up by pleading no contest to the charges, and defendant indicated that he understood each of them and that he also understood that a plea of no contest meant that he was giving up those rights. Defendant's counsel confirmed that he had advised defendant of any immigration consequences of his pleas.

Following the plea colloquy, defendant pleaded no contest to counts 4 through 6 and admitted the gang enhancement allegations. Defendant's counsel confirmed that he had an adequate opportunity to discuss with defendant the nature of the charges, any defenses to the charges, and the maximum and minimum penalties associated with the charges.

The prosecutor stated that defendant had been asked to waive all his appellate rights. The court stated that it understood that, as part of the negotiated disposition, defendant was agreeing to give up his right of appeal. It explained that a claim of ineffective assistance of counsel was excluded from such waiver. The court then asked, "So other than that issue, do you give up your right to appeal through today's date?" Defendant replied, "Yes, I do."

When defendant was interviewed for the probation report for sentencing, defendant stated that he intended to file a motion to withdraw his plea. Defendant felt that it had been a mistake to take the plea bargain. According to the report, he said, "I know I'm not innocent in everything, but this doesn't feel right."

On May 20, 2015, defendant filed a motion to withdraw his plea. Without explanation or new evidence, defendant asserted that he was innocent of the charges to which he had pleaded on February 13, 2015. He believed that, in accepting the negotiated disposition, he had made one of the greatest errors that he had ever made and he had made an "injurious mistake." The trial court found there was no good cause for

granting the motion, and it denied the motion.[3] It then sentenced defendant in accordance with the negotiated plea agreement.

Defendant was sentenced to a total term of 21 years, which consisted of an upper term of 11 years for voluntary manslaughter (§ 192, subd. (a)), two concurrent three-year terms for the assaults with a firearm (§ 245, subd. (a)(2)), and a 10-year gang enhancement term (§ 186.22, subd. (b)(1)(C)). The punishment for each enhancement under section 186.22, subdivision (b)(1)(B), was stricken.

The trial court awarded defendant total credit of 113 days, consisting of 99 actual days of custody plus 14 days credit (§ 2933.1).

Defendant was ordered to pay restitution as determined by the court. At the time of sentencing, the court ordered defendant to pay $7,500 to the Victim Compensation and Government Claims Board. As to the deceased victim, the trial court ordered defendant to pay $10,000 in restitution. Defendant waived his right to a hearing to dispute those amounts.

The trial court imposed a restitution fine of $200 (§ 1202.4, subd. (b)), and it imposed and suspended a parole revocation restitution fine of $200 (§ 1202.45). Additionally, the court imposed the following: a court security fee (properly referred to as a "court operations" assessment) of $120 (§ 1465.8); a criminal conviction assessment (properly referred to a "court facilities" assessment) of $90 (Gov. Code, § 70373); and a

---

[3] "Pleas are not set aside simply because defendants change their minds. [Citations.]" (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1143-1144.) "Section 1018 permits a trial court to allow a criminal defendant to withdraw his guilty plea 'for a good cause shown.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) "It is the defendant's burden to produce evidence of good cause by clear and convincing evidence. [Citation.]" (*Ibid.*) "A decision to deny a motion to withdraw a guilty plea ' "rests in the sound discretion of the trial court" ' and is final unless the defendant can show a clear abuse of that discretion. [Citation.] Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. [Citation.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

criminal justice administration fee of $129.75 payable to the City of San Jose (See Gov. Code, §§ 29550, 29550.1, 29550.2).  Defense counsel waived any right to a hearing on defendant's ability to pay the fees and fines imposed.

III

*Discussion*

We have carefully reviewed the entire record, and find no arguable issue on appeal.  (*Kelly*, *supra*, 40 Cal.4th at p. 124; *Wende*, *supra*, 25 Cal.3d at pp. 441-443.)

DISPOSITION

The judgment is affirmed.

_____

ELIA, ACTING P.J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

_____

MIHARA, J.