Filed 10/1/13  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONNIE NEIL GARCIA,<br><br>    Defendant and Appellant. | F065296<br><br>(Super. Ct. No. BF137956A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Poochigian, J.

Appellant, Ronnie Neil Garcia, pled no contest to residential robbery (Pen. Code, § 212.5, subd. (a))[1] and admitted a personal use of a firearm enhancement (§ 12022.5, subd. (a)).

On appeal, Garcia contends: 1) the court abused its discretion when it denied his motion to withdraw plea; and 2) the imposition of a $240 restitution fine violates ex post facto principles.[2] We will find merit to this last contention and modify the judgment accordingly. In all other respects, we affirm.

## FACTS

On July 30, 2011, P.A. reported to Bakersfield police officers that at approximately 6:30 a.m. she was awakened by knocking on her front door and the doorbell ringing. P.A. opened the door and saw Garcia, a friend of her ex-boyfriend, standing there. P.A. became very scared because a year earlier Garcia raped her and she did not report the rape because he threatened to kill her if she called police. Garcia entered the house and told her he wanted her television, that his life depended on it, and that he would return it the following day. After P.A. refused, Garcia pulled out a revolver and pointed it at her. He also placed his arm around her neck and began squeezing while whispering in her ear, "My life depends on it and you don't care. You don't want me to use this gun." Garcia then had P.A. go into her bedroom. P.A. walked out of the bedroom a short time later and saw Garcia in the living room and another suspect carrying her television away. P.A. also noticed that her telephone and computer were

---

[1]     All further statutory references are to the Penal Code.

[2]     In his opening brief, Garcia also contended that the matter should be remanded for an "on-the-record judgment and sentencing" because the reporter's transcript of his sentencing hearing includes only the portion of the hearing during which the court heard Garcia's motion to withdraw plea and not the actual sentencing itself. This argument is moot because the missing portion of the reporter's transcript of Garcia's sentencing hearing was filed in this court on January 30, 2013, and on February 21, 2013, this court granted Garcia's motion to withdraw this argument.

2.

missing.  In a second statement to police later that day, P.A. stated this incident actually occurred on July 29, 2011, at 11:30 p.m., and that she originally lied about the time because she was "deathly" afraid of Garcia.

When Garcia was arrested on August 6, 2011, he denied any involvement in the incident and claimed he did not know P.A.

### The Motion to Withdraw Plea and Sentencing

On August 9, 2011, the district attorney filed a complaint charging Garcia with residential robbery (count 1), child endangerment (count 2/§ 273a, subd. (a)), participating in a criminal street gang (count 3/§ 186.22, subd. (a)), and being a felon in possession of a firearm (count 4/§ 12021, subd. (a)(1)).  The complaint also alleged a gang enhancement in count 1 (§ 186.22, subd. (b)(1)), a use of a firearm enhancement in count 1 (§ 12022.53, subd. (b)) and count 2 (§ 12022.5, subd. (a)), and two prior prison term enhancements (§ 667.5, subd. (b)).

On November 15, 2011, the court granted the prosecutor's motion to amend count 1 to allege a firearm use enhancement pursuant to section 12022.5, subdivision (a). Garcia then pled no contest to the robbery charge in count 1 and admitted the firearm enhancement in that count in exchange for the dismissal of the remaining counts and allegations and a stipulated term of nine years.  Garcia was represented by Public Defender Timothy Blenner during the change of plea proceedings.

On January 19, 2012, the court granted Garcia's *Marsden*[3] motion and appointed the Indigent Defense Program to represent Garcia.

On January 23, 2012, Garcia appeared with retained counsel Brian McNamara.

On April 17, 2012, McNamara filed a motion to withdraw plea on Garcia's behalf.

On June 15, 2012, Garcia filed a second motion to withdraw plea, alleging Garcia was denied the effective assistance of counsel in entering his plea because Attorney

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

3.

Blenner did not use an investigator to assist in Garcia's defense, he did not return calls from Garcia or Garcia's family members, and he did not provide Garcia with any "paperwork" or discovery. The moving papers also alleged that Garcia suffers from affective mood disorder and receives Supplemental Security Income (SSI) benefits, that he should have been accommodated with more time to consider the plea offer, and that this negated a finding that his plea was free and voluntary. The motion did not have any declarations or other evidence attached.

On June 27, 2012, at a hearing on the motion, Garcia testified that from August 6, 2011, to the date he entered his plea, he met with Attorney Blenner outside the court only twice, each time at the Lerdo Facility. The first meeting occurred the day before his arraignment and lasted only a few minutes. During that meeting Garcia told Blenner about his witnesses and he asked Blenner who would be called. The following day Blenner spoke with Garcia one or two minutes at court and he told Garcia only that the purpose of the hearing was for Garcia to plead guilty or not guilty.

The second meeting with Blenner at Lerdo lasted only five to ten minutes. During that meeting Blenner told Garcia he could not find any of Garcia's witnesses and that it did not look good for him. Garcia had not given Blenner any information on the witnesses other than their names because he did not "remember a couple of things." However, after that meeting, he tried calling Blenner, but was unable to get through. Garcia also called some family members, made a three-way call with them to Blenner, and left a message. Additionally, he had family members call Blenner on their own and leave messages. Garcia wanted to contact Blenner so Blenner would meet with him and to ask Blenner to send someone to get a video. Garcia was unsuccessful in contacting Blenner, but left messages for him. Garcia believed his witnesses would be "very helpful" to his case, but he did not explain how.

On the day he entered his plea, Blenner told Garcia that if he did not accept the plea offer he would lose at trial. Blenner kept telling him that he had to take a deal for an

4.

arming enhancement and a robbery and that would "make all the other charges go away." Garcia replied that he did not want to "sign a deal for a gun." Garcia took the plea bargain because Blenner could not find any of his witnesses and Blenner told him that if he went to trial he would lose. Garcia did not have any contact with the witnesses he was looking for prior to accepting his plea deal.

Garcia also claimed that Blenner never went over the police report with Garcia and that Blenner only provided Garcia a copy of the report when Attorney McNamara replaced him. Garcia further testified that his brother was the payee for SSI benefits he had been receiving since he was 18 years old but he did not know why he received the benefits.

On cross-examination, Garcia testified he gave Blenner the first and last names of three witnesses: Ronnie Flores, Mike Landers, and Gina Provencio, and that Blenner already knew the last name and address of P.A., the complaining party. Garcia also gave Provencio's address to Blenner and he told Blenner he believed Landers was in custody in another part of the Lerdo Facility. Garcia also wanted Blenner to get a store video that allegedly showed that "they" were at the store at the time that he allegedly robbed the victim.

Garcia acknowledged that Blenner spoke to him at least three times about his plea and that he told Garcia he was facing 30 years or more. Blenner also conveyed an offer of 16 years, which Garcia refused. Garcia also acknowledged that Blenner went over the change of plea form with him and that Garcia initialed the form and put his thumbprint on it.

Blenner testified for the prosecution that he visited Garcia twice at the Lerdo Facility, met with him twice through a video conference system that is set up between the facility and Blenner's office, and met with Garcia three times at the court on hearing dates. At Lerdo, Blenner reviewed the police report with Garcia, went over the charges, and discussed how the pre-preliminary and preliminary hearings would proceed. Blenner

next met with Garcia after the pre-preliminary hearing when he discussed with him that no offer had been made and that Blenner had not yet been provided with a gang packet. During these meetings Garcia mentioned a witness named Mike Landers but he did not provide Blenner with Landers's name or contact information until the day Garcia was sentenced. Blenner did not recall if Garcia called him, but Blenner spoke with his mother on the phone and in court.

During his meetings with Garcia, Blenner would discuss the strengths and weaknesses of Garcia's case and the chances of getting an acquittal. He also discussed with Garcia the 16-year offer. Garcia had indicated he would accept a seven-year term but that counteroffer was rejected by the prosecutor. On the day Garcia entered his plea, Blenner discussed with Garcia the nine-year offer by the district attorney; Garcia asked Blenner to discuss it with his mother. Blenner then spoke with Garcia's mother in the hallway and she told him to relay to Garcia that she thought he should accept the offer. When they filled out the change of plea form, Garcia appeared to understand its contents as they went over it.

Blenner gave Garcia a copy of the initial police report and he reviewed the report and the gang packet with him multiple times. Blenner did not use an investigator prior to Garcia entering a plea because Garcia had not provided enough information to warrant one. Garcia mentioned a store video to Blenner, but he did not provide enough information to determine the store he was talking about.

In denying Garcia's motion to withdraw plea, the court stated that it found Blenner credible. The court also found that Garcia did not provide Blenner with enough information to investigate and locate witnesses, that Garcia provided the name of only one potential witness, he did not provide the witness's full name until the day he was sentenced, and that Garcia's disability did not affect his ability to understand the change of plea form or the change of plea proceedings.

The court then sentenced Garcia per his plea agreement to an aggregate nine-year term, the aggravated term of six years on his robbery conviction and a mitigated three-year term on the arming enhancement. The court also imposed a $240 restitution fine (§ 1202.4, subd. (b)), and a corresponding $240[4] parole revocation fine (§ 1202.45).

### DISCUSSION

*The Motion to Withdraw Plea*

Garcia contends Attorney Blenner provided him ineffective representation by his failure to conduct an adequate investigation prior to allowing Garcia to enter a plea. Thus, according to Garcia, the court abused its discretion when it denied his motion to withdraw his plea. We disagree.

Section 1018 provides, in part: "On application of the defendant at any time before judgment ..., the court may, ... for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.... This section shall be liberally construed to effect these objects and to promote justice." The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. (*Ibid.; People v. Nance* (1991) 1 Cal.App.4th 1453, 1457.) "A plea may not be withdrawn simply because the defendant has changed his mind." (*Nance*, *supra*, at p. 1456.) The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *Nance*, *supra*, at p. 1457.) "A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (*Nance*, *supra*, at p. 1456.) "Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*Fairbank*, *supra*, at p. 1254.)

---

**4** Section 1202.45 requires that the parole revocation fine be imposed in the same amount as the restitution fine.

"The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) Accordingly, ineffective assistance of counsel may constitute good cause for withdrawal of a guilty plea. (*Id.* at p. 934 ["where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea"].) However, "in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. [Citation.]" (*Id.* at p. 934.) "A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing. [Citation.]" (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1140.)

"[T]he reasonableness of a tactical decision at trial invites scrutiny as to whether that decision was an informed one, that is, whether it was preceded by adequate investigation and preparation. (See, e.g., *Strickland v. Washington* [(1984)] 466 U.S. [668,] 690-691 ['[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'] ….)" (*In re Jones* (1996) 13 Cal.4th 552, 564-565.)

Here, the court found Attorney Blenner's testimony credible. Further, Blenner testified he met with Garcia several times before Garcia entered his plea, that he

8.

discussed the case, the police reports and the gang package with him, and that he communicated the district attorney's offers to Garcia and Garcia's counteroffer, which was rejected, to the district attorney. During these meetings, Garcia advised Blenner of only one potential witness, Mike Landers. However, prior to Garcia entering a plea, he did not provide Blenner with Landers's full name, any information how to locate him, or what relevant information Landers could provide. Garcia also mentioned a store video, but he did not provide Blenner with enough information to identify the store where the video was located or the significance of the video. Accordingly, we reject Garcia's contention that defense counsel provided ineffective representation by his failure to conduct an adequate investigation of his witnesses and the above noted store video.

Garcia also failed to show he was prejudiced by defense counsel's alleged lack of investigation because he did not testify that he would not have entered his plea but for Attorney Blenner's alleged deficient performance or provide any objective evidence to that effect. Further, it follows from Garcia's failure to show he was denied the effective assistance of counsel in entering his plea that the court did not abuse its discretion when it denied his motion to withdraw plea.

### The Restitution Fine

Effective January 1, 2012, section 1202.4 was amended to increase the minimum restitution fine from $200 to $240. (§ 1202.4, subd. (b)(1), as amended by Stats 2011, ch. 358, § 1, p. 3759.) Garcia contends that since he committed his offense before the effective date of this amendment, the imposition of a minimum restitution fine of $240 violates ex post facto principles. Thus, according to Garcia, his restitution fine of $240 and the corresponding $240 parole revocation fine should be reduced to $200. Respondent concedes and we agree.

"A restitution fine qualifies as punishment for purposes of the prohibition against ex post facto laws. [Citations.]" (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.) Hence, the 2012 increase in the minimum restitution fine and the corresponding increase

9.

in the parole restitution fine cannot be applied to a defendant like Garcia, whose offense was committed before the effective date of the amendment.

## DISPOSITION

The restitution fine and the corresponding parole revocation fine are reduced to $200. The trial court is directed to prepare an amended abstract of judgment that is consistent with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.