Filed 10/1/20  In re Westfield CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re<br><br>ADAM WESTFIELD<br><br>on<br><br>Habeas Corpus. | B304263<br><br>(Los Angeles County<br>Super. Ct. No. TA143786) |

Petition for writ of habeas corpus.  H. Clay Jacke II, Judge Relief granted.

Paul Stubb Jr., under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Respondent.

Adam Westfield is currently serving a 20-year term of imprisonment. In 2018, he pleaded no contest pursuant to a plea agreement, which required him to admit that a prior conviction for vehicular manslaughter was a serious felony and a strike within the meaning of the three strikes law. (Pen. Code, §§ 667, subd. (a)(1); 667, subds. (b) through (i); & 1170.12.)[1] In this petition for writ of habeas corpus, he alleges he is unlawfully incarcerated because his trial counsel failed to fully investigate whether his prior conviction qualified as a prior strike, as alleged in the Information. He argues that had his counsel fully investigated the prior conviction and applicable law, counsel would have known the strike did not qualify as a strike.

Petitioner's maximum sentence exposure with a valid prior strike conviction was 36 years; without such a conviction it was 24 years four months. Petitioner avers he would not have accepted the plea agreement for 20 years had he been correctly advised that the conviction was not a valid strike prior and could not be used to increase his sentence.

We issued an order to show cause, to which the People filed a return and petitioner filed a traverse. We find petitioner has established counsel was ineffective. We grant petitioner's alternate request for an evidentiary hearing to resolve the disputed issue whether petitioner indeed entered into the plea agreement in reliance on counsel's deficient advice. We remand this matter to the trial court for that hearing.

---

[1] Further undesignated statutory references are to the Penal Code.

# BACKGROUND

Seven charges were filed against petitioner involving two different victims.  Attempted murder, mayhem, false imprisonment, and inflicting corporal injury on a current or former dating partner or former spouse within seven years of a prior conviction for felony assault with an allegation of great bodily injury involved victim Turner.  According to the preliminary hearing transcript, on May 20, 2017, Turner and petitioner were in a hotel room when petitioner became angry and hit her in the left eye with a closed fist.  He hit her in the face and head, choked her, and stomped her many times.  Turner was able to leave the room and go home.  She thought she was going to die and called an ambulance, but ultimately her mother took her to the hospital where she was admitted.  The hospital released her the next day.  About a week later, her left side went numb and she began to vomit and limp.  Eventually, a friend took her back to the hospital where she had seizures, went into a coma, and was placed in the ICU.  At the time of the June 2018 preliminary hearing, Turner was unable to speak and needed a walker.

Trial began November 5, 2018.  By that time Turner was using a wheelchair and still could not speak.  She was expected to testify at trial by typing her answers to questions, which would be read aloud to the jury; alternatively, where appropriate, it was arranged she would hold up a flashcard with a short common answer such as Yes or No.  When petitioner entered into his plea agreement on the second day of trial, Turner had appeared at the courthouse, but had not yet testified.

The remaining three charges, inflicting corporal injury on a current or former dating partner or spouse and two counts of dissuading a witness from attending a judicial proceeding or giving testimony, involved victim Nicholson. Petitioner entered into the plea agreement after Nicholson had appeared and testified at trial. She testified that on April 11, 2017, she and petitioner got into an argument at her home. He choked her and hit her in the mouth. Her neighbor called 911 and responding police officers photographed her injuries.

In addition to the substantive charges involving the two women, the amended information alleged petitioner had suffered a prior strike conviction and served five prior prison terms within the meaning of section 667.5, subdivision (b).

The plea offer which petitioner accepted on November 6, 2018 was not new. On November 5, 2018, after learning both victims were present to testify against him at trial, petitioner had indicated a desire to accept the prosecutor's offer. There was some confusion about whether the prosecution's offer was open until Turner testified, or only until she came to court. The prosecutor expressed some reluctance to check with her office about the offer's viability because the "last time I went down there and got what he wanted, I came back up and, you know, was told no." The court then offered to inquire of petitioner in open court whether he wanted to accept the plea offer.

When the court asked petitioner if it was correct that he wished to accept the offer, petitioner replied, "Uh, it's true to an extent." He added, "I need you to break it down for me." The prosecutor explained the offer of 20 years required petitioner to plead to inflicting corporal injury on Turner, admit the great bodily injury allegation, and admit that his prior vehicular

4

manslaughter conviction was a serious felony within the meaning of section 667, subdivision (a) and also a strike conviction within the meaning of sections 667, subdivisions (b) through (i) and 1170.12. The remaining charges and allegations would be dismissed. Petitioner declined the offer.

Trial resumed. Nicholson testified with difficulty. She asked for several breaks. During one break, the court revisited the plea offer. The court expressed its opinion that Nicholson had "come off [as] very sympathetic." The court then made petitioner an alternate plea offer for 20 years requiring him to "plead to everything" but the court "would strike the strike." The court asked petitioner if he was interested. Petitioner replied: "Plead to attempted murder?" The court said, "You have to do that." Petitioner said, "No." The court then clarified "the People's original offer didn't involve the attempted murder. [¶] See, my offer has to include it. . . . [S]ee the difference?"

Petitioner responded: "But the only problem I got with that, right, she trying to give me a strike for something that's not a strike. [¶] Vehicular manslaughter was a—my situation was a car accident. I took a deal for a county lid, no strike. I done [*sic*] came back to jail numerous times after that and had half time. [¶] That's an unlawful deal." The court responded, "Let me look at that, because if that's true, then that's something different." The court expressed an interest in seeing the plea transcript and asked the clerk to get the file right away.[2]

---

[2]     The plea to vehicular manslaughter had occurred in Compton, the same courthouse where petitioner was currently on trial.

5

While waiting for the file, the court asked petitioner: "Now, let's assume that issue is resolved in your favor. If I look at it and I say you're correct, then where do you stand?" Petitioner replied: "Uh, uh, uh, I'll take a disposition." The prosecutor volunteered that petitioner had admitted in another prior assault case that the vehicular manslaughter conviction was a strike. The court then appeared to look at the plea transcript for that case, stating "This is not the sentencing. All this says is he pled to 192[, subd.] (c)(1) [vehicular manslaughter]."

Trial resumed, with Nicholson still testifying. During a break, petitioner made a *Marsden*[3] motion, which the court denied. The transcript of the hearing is sealed, and neither party has asked us to unseal the motion for purposes of evaluating petitioner's ineffective assistance of counsel claim.

Trial resumed. At the end of the day on November 5, 2018, court and counsel discussed the procedures by which victim Turner would testify the following afternoon. The prosecutor explained Turner would have to type her responses, but she used a slow "hunt and peck" method. She and defense counsel had agreed they would use a series of flash cards with common responses such as "Yes" or "I don't remember" for Ms. Turner to point to or hold up. The court ended by stating to counsel: "And I still want something regarding the strike about when that statute, [section] 1192.8, was enacted and if this took place before that. I want to know would that still apply or what applies." The court added: "I want to be able to answer that for him."

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

6

Trial resumed the next day, November 6, 2018, with no discussion of the strike allegation. As Nicholson took the stand, defense counsel told the court petitioner had "indicated to me that he would accept the offer of the People for the 20 years as we have discussed." The court again directed the prosecutor to explain the structure of the offer. She explained petitioner would plead to inflicting corporal injury on victim Turner and receive a five-year term, doubled to 10 years, because petitioner would admit his prior strike. Petitioner would also admit the great bodily allegation for an additional five years. In addition, he would admit his five prior prison terms under section 667, subdivision (b) for another five years, for a total of 20 years. The prosecutor stated petitioner's maximum possible sentence could otherwise be 36 years.

Petitioner agreed to the terms. The prosecutor then advised petitioner of his rights, obtained his waiver of those rights, and took petitioner's plea. When she asked petitioner if he admitted or denied that he had suffered the strike conviction, petitioner replied, "Yep, yep." Then, after conferring briefly with counsel, petitioner stated "I don't understand what she wants me to admit to." The court explained that the prosecutor was referring to the prior conviction as a strike. Petitioner asked, "Oh, I'm going to admit to what? That I have a strike?" The court replied, "You are admitting that you suffered that conviction under that Penal Code section." Petitioner replied, "I admit I suffered that conviction. That's what I admit." The court explained that petitioner would have to "admit that conviction within the meaning of Penal Code section 667[, subd.](d) and Penal Code section 1170.12[, subd.] (b)." Petitioner replied, "I just admit the conviction, man. That's all I can do. I can't admit

7

nothing else, though." The court explained: "No, no, but within the meaning of those sections." Petitioner replied, " I don't make laws. I don't understand that. I ain't admitting to that." The court told petitioner to talk to his lawyer.

After speaking with counsel, petitioner stated, "I admit to the conviction, man. That's all I can say." The court then explained that for "this plea agreement to go through, we have to make sure that, not only that you're admitting to these convictions, but you're admitting to this prior conviction—in other words, you know what it is. Okay? But you're also admitting that it counts under certain sections of the Penal Code." Petitioner replied, "All right. I admit that."

At petitioner's request, sentencing was deferred until after Christmas. Petitioner soon filed a motion and an amended motion to withdraw his plea. In his amended motion, petitioner stated he was not guilty of the charges and had good and substantial defenses to them and had entered his no contest plea from confusion, mistaken, ignorance, inadvertence or other factors. In his supporting declaration, petitioner stated he had forgotten to take his psychiatric medications on the morning of the plea and "due to [his] confusion and unstable mental state, he mistakenly and inadvertently entered into a 'no contest' plea without being in his right frame of mind." He further declared he "did not have his clear judgment and right frame of mind due to his inadvertence and mistake in leaving his prescribed psych medications at the county jail before being transported to court for trial." "Due to [his] unstabilized mental state at the time he pled no contest . . . he was not in the right frame of mind to make or enter into such a plea knowingly and voluntarily."

The trial court held a hearing on the motion. Petitioner testified. His counsel asked him, "What specifically didn't you understand about your plea?" Petitioner replied, "Uh, everything. . . . A lot of things I didn't understand when I took my plea, such as admitting to prior strikes and other things such as that nature." Counsel asked, "Well, I mean, you're aware that you were convicted of vehicular manslaughter; correct?" Petitioner replied, "Yes." Counsel asked: "And that was explained to you, that, notwithstanding your opinion, it was in fact legally a strike; correct?" Petitioner replied, "Uh, no." Petitioner denied that he was aware he was being sentenced for a second strike or that he was receiving time for great bodily injury.

The prosecutor did not cross-examine petitioner. She primarily relied on the transcript of the November 6, 2018 plea proceedings to show petitioner understood the plea. She also told the court the People had "numerous" recorded jail calls in which petitioner discussed in detail the proffered plea bargain with a male relative. She stated she had "personally heard [petitioner] have discussions with his relatives on the phone about what we wanted him to plead to." The prosecutor also represented to the court defense counsel had informed her what petitioner "did not want to plead to and was pretty adamant about not wanting to plead to was the attempted murder, that he made the conscious decision. [¶] And the People allowed him to plead to this [section] 273.5 for the 20 years, because he consciously and was quite explicit about how he didn't want to plead to the attempted murder."

9

In denying the motion the court found petitioner had not met his burden of showing that his decision to accept the plea offer was based on mistake, fraud, ignorance or duress.

Petitioner appealed the judgment of conviction. Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436; petitioner did not file a supplemental brief. We affirmed the judgment of conviction. (*People v. Westfield* (Mar. 5, 2020, B296012) [nonpub. opn.].)

## DISCUSSION

A petition for writ of habeas corpus should "state fully and with particularity the facts on which relief is sought." (*People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*).) " 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' " (*Ibid.*) The burden is on the petitioner to establish grounds for his release. We presume the regularity of proceedings that resulted in a final judgment. (*Ibid.*)

We evaluate a writ petition "by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. [Citation.] If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC. [Citations.] 'When an order to show cause does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the respondent to address only those issues.' [Citation.] Issuance of an OSC, therefore, indicates the issuing court's *preliminary assessment* that the petitioner would be entitled to relief if his factual allegations are proved." (*Duvall, supra,* 9 Cal.4th at pp. 474-475.)

10

The return to the petition should " 'allege *facts* tending to establish the legality of petitioner's detention.' [Citations.] . . . The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful." (*Duvall*, *supra*, 9 Cal.4th at p. 476.)

The petitioner's traverse should either admit or dispute any facts alleged in the return. Facts set forth in the return that are not disputed in the traverse are deemed true. (*Duvall*, *supra*, 9 Cal.4th at p. 477.) If the factual allegations in the return are so inadequate that the petitioner cannot answer them, the petitioner may object. (*Ibid.*)

If the pleadings as a whole raise disputed issues of fact, we may remand the matter to the trial court for an evidentiary hearing. (*Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 574.) Claims of ineffective assistance more often lend themselves to resolution in an evidentiary hearing. (*Id.* at p. 575.)

A.  **As His Sole Ground for Relief, Petitioner Asserts Ineffective Assistance of Counsel in Connection with the Plea Agreement.**

As his sole ground for relief, petitioner states trial counsel "did not know the relevant law relating to vehicular manslaughter and when such offenses can be characterized as prior strike convictions; here, petitioner's vehicular manslaughter conviction was treated as a strike prior despite its [*sic*] not being provable as a strike." He also states "it is reasonably probable that a result more favorable to petitioner would have occurred if trial counsel had known that the petitioner's prior conviction for vehicular manslaughter was not a strike. Had trial counsel adequately understood the law and reviewed the underlying

11

case's admissible evidence, he should have concluded petitioner's prior conviction for vehicular manslaughter was not a strike, that [petitioner] should not have been advised to admit that the prior conviction was a strike, that [petitioner's] plea agreement would require a different and lawful aggregate sentence structure, and that petitioner was facing a potential maximum sentence at trial of substantially less than the 36 years presented to petitioner should he be convicted on all counts following a trial."

In his petition, Petitioner alleges facts in the record at trial prove he "was concerned about, and disputed, the characterization of his prior conviction for vehicular manslaughter as a strike. (RT 25-26, 36-37) [¶] Facts outside the record include petitioner's counsel did not advise petitioner that his vehicular manslaughter conviction could not be characterized as a strike and instead advised petitioner that his prior was a strike and that he should admit the same. (Exhibit A [Declaration of Adam Westfield].) Further, material[s] provided by trial counsel . . . indicate that further research into the applicable law was required. (Exhibit B [Declaration of Paul Stubb Jr.; Correspondence; Trial Counsel's Research Notes].) Further still, the underlying case file for the prior show[s] there was no admissible evidence supporting the characterization of petitioner's vehicular manslaughter conviction as a strike prior. (Exhibit C [Information in Case No. TA064028] & D [Reporter's Transcript of Plea Colloquy in TA064028].)"

Petitioner incorporates by reference the admissible records from his prior vehicular manslaughter conviction and the record on appeal from the underlying current case, and requests us to take judicial notice of the same, which we do.

12

B.	**A Defendant Must Provide Corroborating Evidence of Prejudice to Prove Ineffective Assistance of Counsel in Connection with a Plea Agreement.**

"A claim of ineffective assistance of counsel has two components: ' "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. To establish ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1132-1133 (*Vargas*).) "Our review of an attorney's performance is a deferential one." (*Id*. at p. 1133.)

"The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 (*Alvernaz*).) "Although [the decision to plead guilty pursuant to a plea bargain instead of proceeding to trial is a decision ultimately] made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea

13

bargain.  The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial." (*Ibid.*)

" 'It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea.  [Citations.]  [When the contention is that incompetent advice led to a defendant's pleading guilty], a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. [Citation.]'  [Citations.]" (*Vargas, supra,* 83 Cal.App.4th at p. 1134.)  "A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing.  (Cf. *In re Alvernaz, supra,* 2 Cal.4th at p. 938.)" (*Vargas*, at p. 1140.)

In *Alvernaz* our Supreme Court "stated that a number of factors were to be considered including, 'whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.'  [Citation.]  '[A]n additional factor pertinent . . . in determining prejudice may be the defendant's stance at trial.  For example, a defendant's trial protestations, under oath, of complete innocence may detract from the credibility of a hindsight claim that a rejected plea bargain would have been accepted had a single variable (sentencing advice) been different.' " (*Vargas, supra,* 83 Cal.App.4th at p. 1141.)

14

C.  **Trial Counsel was Deficient in Failing to Inform Petitioner His Vehicular Manslaughter Conviction was Not Provable As a Strike.**

Petitioner alleges only limited evidence is admissible to establish the additional fact necessary to qualify vehicular manslaughter as a strike prior.  He further alleges none of the admissible evidence concerning his prior conviction establishes those necessary facts, and so, as a matter of law, his vehicular manslaughter conviction is not a strike conviction.

Section 1192.7 lists the offenses qualifying as serious felonies for purposes of the three strikes law.  This list does not specify the offense of vehicular manslaughter.  However, vehicular manslaughter may otherwise qualify as a serious felony and therefore a strike offense if, in its commission, "the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice."  (§§ 1192.7, subd. (c)(8); 1192.8, subd. (a).)  Personal infliction of injury on a non-accomplice is an additional fact; it is not an element of vehicular manslaughter and so on "a bare record showing only that defendant was convicted by plea of violating section 192, subdivision (c)(1), we can conclude at most that he admitted his grossly negligent conduct proximately caused a death, not that he personally inflicted great bodily injury." (*People v. Marin* (2015) 240 Cal.App.4th 1344, 1351 disapproved on another ground by *People v. Gallardo* (2017) 4 Cal.5th 120, 139, fn. 6 (*Gallardo*).)

"[A] court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction.  [Citation.]  That inquiry

15

invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' [Citation.] The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) When the conviction is based on a plea, the court may consider the information, the plea agreement, and the plea colloquy. (*Descamps v. United States* (2013) 570 U.S. 254, 264, fn. 2 (*Descamps*); see *Gallardo*, at p. 137.)

Determinations about the nature of prior convictions are to be made by the court, rather than a jury, based on the record of conviction. (*Gallardo*, *supra*, 4 Cal.5th at p. 138.) The purpose of this limitation is "to avoid forcing the parties to relitigate long-ago events, threatening defendants with 'harm akin to double jeopardy and denial of speedy trial.' " (*Ibid.*)

Petitioner alleges the admissible evidence in this case does not establish that he personally inflicted great bodily injury on a non-accomplice. He attaches two of the three permissible documents as exhibits C and D to the petition. Those exhibits support petitioner's allegations. The information charging petitioner with vehicular manslaughter does not allege he personally inflicted great bodily injury on a non-accomplice nor does it allege the offense is a serious or violent felony. The second document, the transcript of petitioner's no contest plea, shows he plead to a violation of section 192, subdivision (c)(1) only.

The third document permissible under *Descamps* and *Gallardo* to prove petitioner committed great bodily injury would be a separate plea agreement.  Respondent does not allege in its return that such a document exists.  Thus, we accept as true petitioner's allegation that his vehicular manslaughter was not provable as a prior strike conviction as a matter of law.[4]

Petitioner further alleges his counsel was unaware of the law and of the evidence needed to prove the additional facts needed to qualify the conviction as a strike prior.  We cannot make such a finding on the evidence in the record.  It is true counsel was silent during the reported proceedings when the trial court and the prosecutor stated their belief that the prior conviction qualified as a strike.  A competent attorney could have had a tactical reason for failing to make a public correction of the court or the prosecutor.  While the research notes turned over by trial counsel during these proceedings were short and did not include a citation to *Gallardo,* we see nothing in the record to

---

[4]    Respondent alleges petitioner has failed to show there is no evidence at all that he personally inflicted great bodily injury on a non-accomplice.  That is not the standard we use.  For purposes of determining petitioner's maximum possible sentence, the question is whether the trial court could find the vehicular manslaughter conviction to be a strike.  Only limited evidence is available for that purpose.

There is no doubt that in order to obtain a favorable plea agreement, a defendant may choose to admit a charge or an allegation which has a factual basis even if the People may not be able to prove the necessary facts.  That is a different issue we need not and do not reach at this time.

17

support an inference that these notes represent the total of his legal research on the vehicular manslaughter conviction.[5]

Nevertheless, petitioner alternatively and correctly alleges that even if defense counsel is aware of the relevant law, failing to inform the client of that law can satisfy the defective performance prong of an ineffective assistance of counsel claim. (See, e.g., *People v. McCary* (1985) 166 Cal.App.3d 1, 9; *People v. Plager* (1987) 196 Cal.App.3d 1537, 1542–1543.) Petitioner has filed a declaration stating trial counsel told him the conviction was a strike and the record on appeal shows trial counsel never publicly stated the conviction was not provable as a strike as a matter of law. Together with petitioner's documentary evidence showing the conviction was not provable as a strike, petitioner has shown trial counsel gave him incorrect advice on the law. This establishes deficient performance by counsel, satisfying the first prong of the *Strickland* test.

D. **There Are Disputed Issues of Fact About Whether Petitioner Suffered Prejudice from Counsel's Deficient Performance.**

In addition to showing deficient performance, a petitioner seeking relief based on ineffective assistance of counsel must also show a more favorable outcome was reasonably probable in the absence of counsel's error. There are disputed issues of fact on this prong of the test.

---

[5] The written research notes focus on timing issues related to sections 1192.7 and 1192.8, and it is reasonable to view them simply as a response to the trial court's request for briefing on those issues.

18

In the memorandum of points and authorities incorporated into the petition, petitioner contends: "Absent trial counsel's deficient performance, petitioner would not have admitted the strike prior in exchange for a 20 year sentence as opposed to the 24 year and four month maximum petitioner faced if he proceeded to trial and was convicted on all counts and received the upper term. Based on his trial counsel's faulty advice, petitioner clearly operated under an erroneous understanding of the applicable law. Petitioner's decision to accept the offer and admit the prior was based on counsel's ineffective assistance. (Exh. A)"

Exhibit A is petitioner's declaration. It consists of two sentences: "I was informed by my attorney, Geoffrey Pope, that my prior conviction for vehicular manslaughter was a strike offense and that I had to admit to the same to obtain the benefit of my no contest plea bargain. [¶] . . . I repeatedly informed the court and Mr. Pope that I did not believe my prior conviction was a strike offense but admitted the same after being informed by my attorney that I was wrong."

We note petitioner does not directly state in his declaration that he would have *rejected* the offer if he had been correctly informed that the vehicular manslaughter was not provable as a strike. Nevertheless, it would be possible to infer that conclusion from the declaration as whole if the declaration were consistent with the record on appeal. The declaration, however, is misleading on at least two points. The record shows the trial court made an alternate offer, which did not require petitioner to admit the strike. Petitioner declined the offer. In addition, petitioner did repeatedly state his belief that the vehicular

19

manslaughter conviction was not a strike offense, but his reasons for that belief were incorrect.[6]

Nevertheless, assuming petitioner's declaration establishes his claim that it was trial counsel's advice that caused him to accept the plea deal, the People's return includes factual allegations about petitioner's earlier motion to withdraw the plea which create a factual dispute. As the return summarizes, petitioner sought to withdraw his plea in the trial court on a different basis than the one he asserts now. In the trial court he attributed his acceptance of the plea to mistake and confusion. In his declaration in support of his amended motion to withdraw his plea, petitioner stated that he failed to take his medications on the morning of November 6, 2018 and then "due to the [petitioner's] confusion and unstable mental state, he mistakenly and inadvertently entered into a 'no contest' plea." At the hearing on the motion in the trial court, petitioner testified that there were "a lot of things I didn't understand when I took my plea, such as admitting to prior strikes." Petitioner acknowledged that he was aware of his prior conviction for

---

[6] Petitioner claimed the prosecutor in the vehicular manslaughter case agreed the conviction could not be used as strike in the future and agreed the offense was a misdemeanor. The plea transcript shows a straight plea to a felony offense, and an advisement that the conviction might be used to increase his sentence in the future. Petitioner also expressed a belief that an "accident" could not establish the conviction as a strike, but petitioner was charged with vehicular manslaughter involving gross negligence. Petitioner may also have expressed some concern that he entered his plea before a relevant amendment to section 1192.7 was enacted, but section 1192.8 shows that concern was unfounded.

vehicular manslaughter. Defense counsel then asked, "And that was explained to you, that, notwithstanding your opinion, it was in fact legally a strike; correct?" Petitioner replied, "Uh, no." Petitioner also denied understanding that he was being sentenced for a prior strike conviction or being aware that he was receiving additional time for admitting the great bodily injury allegation.

Petitioner's trial court declaration and testimony that he mistakenly agreed to the plea and did not understand its terms is not consistent with his declaration that he admitted the conviction in reliance on the erroneous advice of counsel about the validity of the alleged prior strike in order to obtain the benefit of his no contest plea bargain. This conflict alone requires an evidentiary hearing.

Further, as the People point out in the return, a defendant's statement alone is not sufficient to show a reasonable probability that he would not have pled guilty and would have insisted on proceeding to trial, but for trial counsel's error. There must be some objective evidence corroborating defendant's claim. (*Alvernaz, supra,* 2 Cal.4th at pp. 938, 945; *Vargas, supra,* 83 Cal.App.4th at p. 1140.) Respondent contends the petition does not identify such evidence.

In the traverse, petitioner does not address the prior motion to withdraw or identify any additional evidence. He simply repeats, almost word for word, his argument in the petition. We understand petitioner is relying on the disparity between the maximum sentence of 36 years communicated by the prosecutor and the maximum sentence of 24 years, four months calculated without the prior strike.

21

In determining whether a defendant would have accepted a plea offer, we consider more than the incorrect information given to a defendant, however. We consider a number of factors: "including 'whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.' " (*Vargas, supra,* 83 Cal.App.4th at p. 1141.)

The petition does not clearly show the full extent of trial counsel's advice. Petitioner declares trial counsel advised him he would have to admit the prior strike to obtain the plea bargain, but he does not directly state trial counsel advised him to accept the bargain. The record on appeal shows trial counsel concurred in the plea and stipulated to a factual basis, so it is reasonable to infer that he did not oppose the plea, or advise petitioner against taking it. This factor is essentially neutral.

Although not discussed by either party, two factors are supported by the record and not reasonably subject to dispute: The plea offer was discussed multiple times in open court, petitioner asked questions about the specifics of the offer and received accurate answers in open court, and there is no evidence trial counsel made any private and conflicting statements to petitioner about the terms of the offer. Petitioner was more than amenable to negotiating a plea bargain, as shown by the prosecutor's uncontradicted remarks. These factors do not assist petitioner in showing prejudice.

The disparity between the maximum sentence of 36 years identified by the prosecutor and the maximum sentence of

22

24 years four months without the unprovable strike prior is potentially a factor corroborating petitioner's claim that he would not have accepted the plea if he had been advised correctly. There is no doubt that, in the abstract, a 20-year plea agreement which avoids a maximum sentence of 36 years is much more favorable and desirable than a 20-year plea agreement which avoids a 24-year four month maximum sentence. Plea agreements do not exist in an abstract hypothetical universe, however. Thus, our Supreme Court has directed courts to consider "the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer." (*Alvernaz, supra*, 2 Cal.4th at p. 938.) Petitioner does not discuss this factor in his petition, that is, he does not discuss the probable consequences of continuing with the trial. Conflicting inferences are possible from the record.

Petitioner did not accept the offer until the middle of the prosecution's case-in-chief. The day before petitioner accepted the plea offer, both victims had appeared for trial. Petitioner was charged with two counts of dissuading Nicholson who was reluctant to testify. Turner had been very seriously injured in the attack with which petitioner was charged; she needed a wheelchair and was physically unable to speak. By the time petitioner accepted the plea offer, Nicholson, although still a reluctant witness, had provided substantial testimony. The court opined she was a sympathetic witness. Arrangements had been made for Turner to testify by typing and using flashcards. Nicholson's testimony clearly increased the probability that petitioner would be convicted of the charges involving her, which alone carried a maximum sentence of five years, four months.

On paper, Turner sounds like she may have been a sympathetic witness. Her preliminary hearing testimony about the attack was solid, and there were photographs of her injuries. Even if the jury only convicted petitioner of the corporal injury charge with the great bodily injury allegation, petitioner was facing a maximum 10-year sentence as to Turner. Petitioner then faced the imposition of five 1-year enhancement terms for prior prison terms. These combined sentences and enhancements totaled a sentence maximum of 20 years, four months. From this vantage point, the plea deal guaranteed a slightly shorter sentence than the most likely outcome and eliminated the risk of an extra four years if the jury convicted him of the attempted murder charge (or an extra three years if it convicted him of the mayhem charge). A reasonable attorney might well recommend such a mid-trial plea to a client and a defendant might decide to accept such a plea offer.

There is nothing in the record to show the probability of petitioner being convicted on the attempted murder or mayhem charges. There is some indication, in the form of the prosecutor's comments during plea negotiations, indicating petitioner was quite averse to being convicted of attempted murder. Thus, even in the absence of direct evidence about the likelihood of conviction, there is a factual dispute about the consequences of the plea viewed at the time the plea was accepted.

E.    **An Evidentiary Hearing in the Trial Court Is Required.**

There is no doubt as a matter of law petitioner's prior conviction was not provable as a strike, and as a consequence his potential maximum sentence was 24 years four months, not the 36 years asserted by the prosecutor and the court. There is

24

undisputed evidence trial counsel was deficient in failing to so advise petitioner. However, petitioner did not accept the plea offer until trial was well underway and there is conflicting evidence that may undermine petitioner's claim he would not have accepted the plea offer had he had been informed of his true maximum sentence. Resolution of the disputed issues identified above is necessary to determine whether petitioner was prejudiced by his counsel's deficient performance.

## DISPOSITION

This matter is remanded to the trial court for an evidentiary hearing on the disputed issues identified in the opinion. If the trial court finds petitioner has established prejudice from trial counsel's deficient performance, the conviction is ordered vacated and the original charges reinstated, with the exception of the strike allegation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

WILEY, J.

25